IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

JEFFREY JOHNSON                          §

VS.                                      §              CIVIL ACTION NO. 6:11cv171

JESSE ARNOLD, ET AL.                     §

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

       Plaintiff Jeffrey Johnson, an inmate confined in the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983.  The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    FACTS

       The original complaint was filed on April 5, 2011.  On July 28, 2011, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims.  Regional Grievance Supervisor Ginger Lively and Warden Dwayne Dewberry testified under oath about prison policies and information contained in the Plaintiff's prison records.  Nurse Tara Patton testified as to the contents of Plaintiff's medical

1

records.

Plaintiff testified that on or about August 6, 2010, while in his cell, he had his arm hanging out of the cell's food slot while looking out over the prison run. Correctional Officer Arnold, performing a count and security check, ordered Plaintiff to remove his arm from the food slot. He then left, but returned and again ordered Plaintiff to remove his arm. Plaintiff hesitated and Defendant Arnold threatened him with mace. Plaintiff then removed his arm and Defendant Arnold closed the food slot. Nonetheless, Defendant Arnold then took his mace and sprayed it through the bars into Plaintiff's mouth. Plaintiff testified he ran to the back of his cell to wash out his mouth and face. Thereafter, Plaintiff further testified, Defendant Arnold continued to spray the mace into his cell, emptying the can. Defendant Stickle, another Correctional Officer, was present and had a chance to stop the "excessive use of force" but failed to do so.

After the spraying incident, Plaintiff was removed from his cell and taken to the showers to wash the spray off. Afterwards, he testified, he was placed back into the cell, which had not been decontaminated. He claims that all of his clothing, mattress, and furnishings inside the cell were contaminated with the spray. He claims he could not obtain clean clothing for three days and did not receive any cleaning materials to decontaminate his cell. He also claims he did not receive adequate warning before he was sprayed with mace. He testified he was injured by the spray's burning and itching and his increased his existing condition of high blood pressure. He also testified he was not taken to medical.

In addition, he testified Defendant Stickle wrote a false disciplinary case against him for threatening officers after he was taken to the showers. He denied he had done so.

Warden Dewberry testified that after a chemical agent is used, it is considered a use of force.

2

However, he testified, he did not have a record of a use of force investigation having been done. Nurse Patton also testified that the medical records available to her at the hearing did not include a use of force medical entry for that date.

However, Regional Grievance Supervisor Lively testified that the records she had obtained included a use of force report having been completed on August 6, 2010.  Further, a medical examination and report had been done by LVN Shelley Cote the same day, showing no injuries as a result of the use of force.  Nurse Patton confirmed that if there is time after the use of chemical agents, medical staff is taken to the area where the gas was used, but if not, then the offender is taken to medical for evaluation, which was the case here.

Warden Dewberry testified further that the gas - known as "carry on person" or COP - is actually orange pepper spray, not "mace." He was not sure which packaging of the COP gas had been used in Plaintiff's case, but most cans are about 3.5 to 4.0 ounces; each officer's can is weighed daily and its weight will change after use.  If it was an LE10 can, it would have been about 2.9 ounces. He described the orange pepper spray as having a "short half-life" with one to two hours' duration at most.  Procedures are to put the offender back in his cell and tell him how to decontaminate it with a soap and water wipe-down.

Plaintiff then testified that he had never been instructed on decontamination procedures and did not wipe down the inside of his cell with a towel.  He consented to Magistrate Judge jurisdiction over his case and agreed to allow the Court to review the records provided by Regional Grievance Supervisor Lively.

The Court has reviewed the records provided and notes that the use of force report and medical report of the incident are included.  The use of force report states that after Plaintiff removed

his arms from the food slot and Defendant Arnold moved to close the slot, Plaintiff grabbed his wrist, which resulted in the use of the chemical agent.

In his lawsuit, Plaintiff is suing Defendants Arnold and Stickle and has also named the Texas Department of Criminal Justice ("TDCJ"), contending that Defendants Arnold and Stickle acted on behalf of TDCJ within the scope of their employment.

## II.    DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994).  To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia."  42 U.S.C. § 1983.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)).  The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . .  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

In his complaint, Plaintiff explicitly contends that Defendant Arnold, a TDCJ Correctional Officer, used excessive force against him and acted with deliberate indifference to his medical needs, in violation of the Eighth Amendment and the due process clause of the Fourteenth Amendment. He further contends that Defendant Stickle, another Correctional Officer, acted with deliberate indifference toward his safety by failing to act to prevent Defendant Arnold from using the chemical agent spray against him in the manner he alleges, also in violation of the Eighth Amendment.  In addition, he contends that the two acted together in a conspiracy to use excessive force.  As to TDCJ, he apparently extends the alleged acts of Defendants Arnold and Stickle to the institution as their employer.

### A.      Eleventh Amendment Immunity

The first issue to consider concerns Eleventh Amendment immunity.  The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).  The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983.  *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity.  *Id.*  The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  Here, Plaintiff seeks only money damages from TDCJ.  The Eleventh Amendment also justifies dismissal of claims against TDCJ "regardless of the relief sought."  *See Tuft v. Texas*, 410 Fed. Appx. 770, 777 (5th Cir. 2011)

5

(per curiam).  Therefore, TDCJ will be dismissed from this lawsuit.

### B.     Excessive Use Of Force

The Supreme Court has emphasized that the core judicial inquiry in an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  The Court additionally emphasized that a use of force claim has subjective and objective components.  In other words, a court must consider whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  *Id.* at 8.

Several factors are important in making an assessment of the situation.  The claimant must allege and prove there was an "unnecessary and wanton infliction of pain."  In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of forceful response."  *Id.* at 7. (internal quotation and citation omitted).  The absence of a serious injury is relevant to but not dispositive of the excessive force claim.  *Id.*  The Fifth Circuit has instructed the courts in this circuit to consider these five factors in analyzing excessive use of force claims.  *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).  The Supreme Court additionally emphasized that the concept of what constitutes cruel and unusual punishment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society."  *Hudson v. McMillian*, 503 U.S. at 8 (citations omitted).

Plaintiff's allegations, if taken as true, arguably states a claim for excessive use of force in

this case.  Inasmuch as he claims a conspiracy between Defendants Arnold and Stickle, they must both answer this charge.

###   C.   Deliberate Indifference

Plaintiff's remaining claims are that Defendants Arnold and Stickle each acted with deliberate indifference, either with regard to his medical needs or with regard to his safety.

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment,' and this includes 'indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Erickson v. Pardus*, 551 U.S. 89, 90, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  "It is not, however, every injury . . . that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate.  *Id*.; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).  "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Mere negligence on the part of prison officials is not enough. *Id*. at 835.  The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights.  *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir.

1997).

Here again, the Plaintiff has alleged facts that arguably support an inference that Defendants Arnold and Stickle either failed to provide medical assistance after the spraying incident, or failed to provide a means to decontaminate Plaintiff's surroundings, or failed to take action to prevent the spraying in the first instance.  These are all best characterized as a claim of deliberate indifference. Defendants Arnold and Stickle must also answer these claims against them.

## III.   CONCLUSION

It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force and deliberate indifference claim against Defendants Arnold and Stickle.  It is further

**ORDERED** that the Plaintiff's remaining civil rights claims against Defendant Texas Department of Criminal Justice are **DISMISSED** with prejudice.

So **ORDERED** and **SIGNED** this **2**   day of  **September, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

8